# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| ANDREW MORAN,     Plaintiff/Counter-Defendant, | : : : | Case No. 1:21-cv-517 |
| vs. | : : | Judge Timothy S. Black |
| RUAN LOGISTICS CORP., *et al.*,     Defendants, | : : : : | |
| STEPHANIE DAY, ESQ., *et al.*,     Third-Party Plaintiffs/ Counter-     Defendants, | : : : : : | |
| vs. | : : | |
| SHERRILL HONDORF,     Third-Party Defendant/Counter-     Plaintiff. | : : : | |

## ORDER DENYING THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 25) AND DENYING WITHOUT PREJUDICE THIRD-PARTY DEFENDANT'S MOTION TO FILE NOTICE OF CHARGING LIEN (Doc. 28)

This civil case is before the Court on Third-Party Plaintiffs' motion for judgment on the pleadings (Doc. 25) and the parties' responsive memoranda (Docs. 27, 29). Also before the Court is Third-Party Defendant's motion to file notice of charging lien on settlement proceeds. (Doc. 28).[1]

---

[1] The Court stayed this action until it could resolve the motion for judgment on the pleadings. Nevertheless, Third-Party Defendant filed her motion to file notice of charging lien. Given the stay already in place, the Court also stayed any responsive briefing that motion. Because the Court denies the motion without prejudice, discussed *infra*, responsive briefing is unnecessary.

## I. BACKGROUND

**A. First Filed Action**

On October 5, 2016, Plaintiff Andrew Moran was painting his mailbox when he was struck by a tire which separated from a commercial tractor truck (the "Incident"). (Doc. 1). Moran sustained severe injuries. (*Id.*) The truck from which the tire separated was registered to Defendant Ruan Logistics Corp. and operated by Defendant Anthony Alford, an employee of Ruan. (Doc. 7). Plaintiff also sued Defendant Ryder Truck Rental, Inc. for allegedly leasing the truck to Ruan. (Doc. 1). Moving forward, the Court refers to Ruan Logistics, Alford, and Ryder as the "Trucking Defendants."

In 2018, Moran filed a complaint against the Trucking Defendants for damages with the assistance of counsel, Third-Party Defendant/Counter-Plaintiff Sherrill Hondorf. *See Moran v. Ruan Logistics*, No. 1:18-cv-223 (S.D. Ohio filed Mar. 30, 2018) (the "First Action"). The First Action included multiple discovery disputes seeking or requiring court intervention. The First Action also included cross motions for summary judgment filed in late 2019. (*See* First Action, Docs. 88, 92).

Throughout most of the First Action, Hondorf was Moran's only counsel. Then, on February 15, 2020, prior to any ruling on the cross motions for summary judgment, Attorney Zachary Gottesman noticed his appearance on behalf of Moran. (First Action, Doc. 107). Shortly thereafter, Gottesman filed a motion to dismiss the action without prejudice on behalf of Moran. (First Action, Doc. 108). In the motion, Moran argued that the case could not proceed on the current record because Hondorf failed to obtain expert witnesses to provide testimony on Moran's vocational limitations, loss of future

2

earning capacity, limitations on functional capacity, and future medical care. (*Id.*) And notably, such discovery was necessary for Plaintiff to receive a just outcome. (*Id.*)

Over the Trucking Defendants' opposition, the Court granted the motion to dismiss without prejudice, noting concern that Moran would be unable to obtain any redress for the serious and traumatic injuries he sustained from the incident. (First Action, Doc. 111). Although granting the motion was a close call given the professional and diligent defense of the Trucking Defendants, the Court declined to blame Moran for mistakes or omissions made by Hondorf. (*Id.*)

### B. Present Action

On August 11, 2021, Moran filed the present action against the Trucking Defendants with the assistance of completely new counsel, Alison DeVilliers, Stephanie Day, and Steven Halper ("Current Counsel").[2] In the Present Action, the Court granted the parties' joint motion to incorporate discovery from the First Action. (11/2/2021 Notation Order). Current Counsel then assisted Moran with reaching a settlement with the Trucking Defendants, and the claims against the Trucking Defendants were dismissed. (Doc. 19).

However, by the time Moran reached a settlement with the Trucking Defendants, it became clear to Moran and his Current Counsel that Hondorf sought fees related to the First Action. Thus, the Court granted Moran and Current Counsel's motion to add a third-party complaint for declaratory relief. (Doc. 16; 7/11/2022 Notation Order).

---

[2] A fourth defendant, O'Neal Steel, LLC, was voluntarily dismissed pursuant a stipulation. (Docs. 7, 8).

3

Specifically, in the Third-Party Complaint, Moran and his Current Counsel (collectively, "Third-Party Plaintiffs") seek a declaration that Hondorf is not entitled to any fees, or, in the alternative, a declaration pronouncing what fees are owed. (Doc. 17). Hondorf answered the Third-Party Complaint and asserted a Counterclaim. (Doc. 22).

### C. Hondorf's Counterclaim

Hondorf's Counterclaim is the operative pleading at issue for the pending motion for judgment on the pleadings. (*Id.*). As alleged by Hondorf:

Hondorf began representing Moran on October 10, 2016, five days after the Incident. (*Id.* at 2).[3] Her representation immediately following the Incident included communications with the Trucking Defendants and their counsel before Moran and Hondorf entered into a fee agreement. (*Id.*)

In April 2018, Moran and Hondorf entered into a contingent fee agreement (the "Fee Agreement"), which provided that Hondorf would receive 20% of proceeds, after expenses were paid, from a settlement or trial. (*Id.* at 3). The Fee Agreement, however, also provided that Moran would pay his expenses throughout the litigation. (*Id.*) The Fee Agreement was handwritten. (*Id.*)

At least a year before Moran terminated Hondorf as his attorney, Moran demanded his file back from Hondorf. (*Id.*) Hondorf did not make a copy of the file, claiming Moran would not wait for copies to be made. (*Id.*) According to Hondorf, Moran is in

---

[3] The paragraphs of Hondorf's counterclaim include nonsequential numbering, so the Court cites to page numbers instead.

possession of the only copy of the Fee Agreement. (*Id.*) Hondorf concedes that she cannot provide a copy of the Fee Agreement. (*Id.* at 4).

With regards to work performed on Moran's cases, Hondorf contends that she performed all legal work which allowed Current Counsel to achieve a settlement. (*Id.* at 3-4). Hondorf believes that Current Counsel did not conduct any of their own legal work or additional discovery, relying solely on the work expended by Hondorf in the First Action. (*Id.*) Based on the foregoing, Hondorf brings a claim for quantum meruit for attorney fees arising from the First Action. (*Id.*)

## II. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citing *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). That is, a court should grant a motion for judgment on the pleadings under Rule 12(c) only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### III. ANALYSIS

Third-Party Plaintiffs move for judgment on the pleadings on Hondorf's Counterclaim, arguing that Hondorf cannot, under any circumstances, assert a quantum meruit claim or impose a charging lien against the settlement fund.

#### A. Quantum Meruit

As explained by the Supreme Court of Ohio: "A client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge." *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 629 N.E.2d 431, 432, paragraph 1 of syllabus (Ohio 1994); *see also Fox & Associates Co., L.P.A. v. Purdon*, 541 N.E.2d 448 (Ohio 1989). Thus, "[w]hen an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency." *Reid,* at paragraph 2 of syllabus. This quantum meruit rule, which allows an attorney to recover only "as much as deserved" (and not pursuant to the terms of the disavowed contingency agreement), "strikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorneys right to be compensated for services rendered." *Id*. at 435 (citing *Fox*, 541 N.E.2d at 450).

Third-Party Plaintiffs argue that Hondorf's quantum meruit claim fails as a matter of law because Hondorf alleges an express contract existed between her and Moran. But, this argument is completely at odds with Ohio law. Ohio law explicitly provides that an

6

attorney who allegedly had a contingency fee agreement with a client and was discharged, may bring a cause of action for fee recovery on the basis of quantum meruit.[4]

To be sure, the contingency fee agreement (and Hondorf's inability to provide a written copy of the agreement) is likely still relevant to Hondorf's claim and her ability to prove her claim. For example, "the agreement remains relevant as: the discharged attorney can recover only after the contingency occurs (the client recovers in the underlying case); the attorney is not usually compensated if the client recovers nothing; and the attorney's recovery in quantum meruit can be limited by the amount provided in the disavowed contract." *Pipino*, 101 N.E.3d at 608–09 (quoting *Reid*, 629 N.3d 431).

But, the contingency fee agreement is only one factor, only part of the totality of the circumstances, which may be considered when determining what, if any, fee Hondorf is owed.[5] *See Reid*, at paragraph three of syllabus (describing factors for the trial court to

---

[4] *See Pipino v. Norman*, 101 N.E.3d 597, 608 (Ohio Ct. App. 2017) ("To the extent the trial court's holding could be read as finding there can be no quantum meruit claim due to the mere existence of a contingency agreement prior to termination, both sides agree the Ohio Supreme Court's *Fox* and *Reid* cases permit recovery in quantum meruit where an attorney operating under a contingency fee agreement has been terminated prior to resolution in the underlying case."); *Burke & Assoc., Inc. v. Koinonia Homes, Inc.*, 735 N.E.2d 479, 481 (Ohio 1999) (recognizing that "[o]rdinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of quantum meruit;" however, the Supreme Court of Ohio "created an exception when there is a contingency fee agreement between an attorney and client.").

[5] Third-Party Plaintiffs also argue that Hondorf is not entitled to recover under quantum meruit because "her malpractice almost barred Mr. Moran from any recovery" and "she did not keep track of the time she spent on the case." (Doc. 25 at 2-3). Again, although these facts will be relevant to Hondrof's ultimate burden, the Court does not consider them at this stage when taking the facts of the Counterclaim as true. *See, e.g.*, *Reid*, 629 N.E.2d at 437, fn.3 ("An attorney operating under even a contingent-fee contract should keep an accurate record of time and resources expended" because "number of hours worked in an important factor to be considered by the trial court in determining [the reasonable value of services rendered]."); *Pipino*, 101 N.E.3d at 612 ("legal malpractice claim can result in a setoff").

consider when determining reasonable value of a discharged contingent-fee attorney's services). And, at this stage in the proceedings, the Court is limited to viewing the well-pleaded facts as true. **Based on the pleadings**, Hondorf had a contingency fee agreement with Moran, her work from the First Action rendered services for Moran, Moran discharged Hondorf before the contingency was reached, the contingency occurred via settlement, and Hondorf is now claiming compensation for the value of services rendered. Hondorf has pled a quantum meruit claim with enough sufficiency to survive a motion for judgment on the pleadings.[6]

### B. Charging Lien

Although Hondorf did not seek imposition of a charging lien in her Counterclaim, Third-Party Plaintiffs spend most of their briefing arguing that Hondorf cannot enforce a charging lien against the settlement. This prompted Hondorf to file, "out of an abundance of caution," her motion for leave to file notice of charging lien. (Doc. 28).

"A charging lien is '[a]n attorney's lien on a claim that the attorney has helped the client perfect, as through a judgment or settlement.'" *Kisling, Nestico & Redick, L.L.C. v. Progressive Max Ins. Co.*, 143 N.E.3d 495, 499 (Ohio 2020) (quoting Black's Law

---

[6] Current Counsel also requests the Court to dismiss them as parties because Hondorf cannot assert an equitable claim against them as third parties to a contract. (Doc. 25 at 19). The Court declines to do so at this time. Current Counsel are clearly interested in the outcome of the proceedings, joining themselves with the third-party proceedings and seeking a declaration from the Court on Hondorf's entitlement to fees. (Doc. 17 at 11). Moreover, at least one Ohio court has permitted an original attorney to bring an action against successor attorneys under a similar equitable theory of constructive trust. *E.g., Harraman v. Howlett*, 2004 WL 2348514, *5 (Ohio Ct. App. 2004) (finding no error when trial court imposed constructive trust on successor attorney fees because "inherent injustice" would result if clients were required to pay original attorney and successor attorney, especially if successor attorney failed to inform clients they may have an obligation to pay original attorney on quantum meruit basis).

Dictionary 1108 (11th Ed.2019)). "Ohio—unlike the majority of states—has no statute addressing how and when an attorney's charging lien attaches or how it can be enforced. Instead, in Ohio, charging liens are recognized and enforced under the common law." *Id*. at 499 (citation omitted). As explained by the Supreme Court of Ohio:

> The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

*Cohen v. Goldberger*, 141 N.E. 656, paragraph one of the syllabus (Ohio 1923). Thus, a charging lien, like quantum meruit, is an equitable enforcement of an attorney's right to recover fees for services rendered.

A charging lien can attach to a judgment or a settlement. *Kisling*, 143 N.E.3d at 499. The fact that an attorney has been discharged from a case does not mean that a charging lien cannot be enforced. *Id*. at 500. "[A] party's former attorney may pursue a charging lien by intervening in an action or by filing a motion." *Id.* Ohio courts consider some of the following factors when deciding whether to impose a charging lien:

> (1) the right of the client to be heard on the merits; (2) the right of an attorney to invoke the equitable jurisdiction of the courts to protect his fee for services rendered; (3) the elimination of unnecessary and duplicative litigation; (4) the opportunity for the client to obtain counsel to litigate the claim for attorney fees; (5) the propriety of an order as opposed to a judgment; (6) a forum for the presentation of witnesses, if necessary; and (7) the equitable nature of the proceeding.

*Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.*, 594 N.E.2d 146, 149-50 (Ohio Ct. App. 1991). "Ultimately though, the decision to impose an attorney charging lien is based on

9

the facts and circumstances of the particular case and is left to the sound discretion of the court." *Ohio Willow Wood Co. v. Alps S., LLC*, No. 2:04-CV-1223, 2019 WL 2537477, at *2 (S.D. Ohio June 20, 2019) (citation omitted).

Like Plaintiff's quantum meruit claim, a decision to impose a charging lien based on the pleadings is premature. The parties clearly dispute whether Hondorf's services in the First Action provided any benefit for Moran. No party has been fully heard on the merits on Hondorf's claim for fees. Moreover, imposing a charging lien is unnecessary and duplicative. The parties are already litigating Hondorf's request for fees. Whether named as a claim for quantum meruit or a request for a charging lien, the Court is tasked with the same question: under equity principles, is Hondorf entitled to some amount of fees for services rendered during the First Action?

Thus, the Court declines to impose an attorney charging lien on the settlement fund at this time. Hondorf's motion for leave to file is **DENIED without prejudice**.

### IV. CONCLUSION

Based upon the foregoing, Third-Party Plaintiffs' motion for judgment on the pleadings (Doc. 25) is **DENIED**. Third-Party Defendant's motion for leave to file charging lien (Doc. 28) is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Date: 1/25/2023

*s/Timothy S. Black*
Timothy S. Black
United States District Judge

10